# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARVIE B. CARROLL, | CASE NO. 1:10-cv-00623-SKO PC |
| Plaintiff, | ORDER DISMISSING INADEQUATE FOOTWEAR CLAIMS FROM ACTION WITHOUT PREJUDICE, AND REQUIRING PLAINTIFF TO EITHER FILE SECOND AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON EIGHTH AMENDMENT CLAIM AGAINST DEFENDANTS DUTRA AND SOTO |
| v. | |
| JAMES A. YATES, et al., | |
| Defendants. | |
| | (Doc. 17) |
| | THIRTY-DAY DEADLINE |

_____/

## Screening Order

### I.    Screening Requirement and Standard

Plaintiff Arvie B. Carroll, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 and California law on April 9, 2010.  On April 12, 2011, Plaintiff filed an amended complaint as a matter of right.  Fed. R. Civ. P. 15(a).

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

1

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  While factual allegations are accepted as true, legal conclusions are not.  Iqbal, 129 S.Ct. at 1949.

To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights.  Iqbal, 129 S.Ct. at 1949; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  This requires the presentation of factual allegations sufficient to state a plausible claim for relief.  Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

**II.**    **Summary of Amended Complaint**

   **A.**    **Allegations**

Plaintiff is currently incarcerated at Pleasant Valley State Prison (PVSP), where the events at issue in this action occurred.  Plaintiff alleges that Wardens James A. Yates and R. H. Trimble; Chief Deputy Warden J. Mattingly; Associate Warden M. C. Davis; inmate appeals coordinators or managers N. Grannis, M. Broddrich, J. Walker, I. Igbinosa, and A. Nesbit; Correctional Counselor G. Duran; Correctional Lieutenants J. D. Bennett and N. Greene; Correctional Sergeant W. R. Oxborrow; Correctional Officer K. Dutra; Senior Lab Technician C. Samareta; and Licensed Vocational Nurse Valdez violated his rights under the Eighth Amendment of the United States Constitution and under California law.  Plaintiff seeks damages and an injunction prohibiting enforcement of the outdoor staging policy and requiring Defendants to provide him with adequate footwear.

1       **1.    Eye Condition**

2           In September or October of 2008 while at Kern Valley State Prison, Plaintiff had surgery to

3   remove a cataract from his left eye.  Plaintiff was instructed not to let water get in his eye and he was

4   prescribed Prednisolene, Moxifloxa, and Ketorolac following the surgery.  Plaintiff also suffers from

5   hypothyroidism, which slowed the healing of his eye.

6           On November 17, 2008, Plaintiff was transferred to PVSP.  Medical staff reviewed Plaintiff's

7   medical information, noted his history of tuberculosis and his recent eye surgery, and provided

8   Plaintiff with prescriptions for his thyroid condition and eye pending an initial appointment with a

9   doctor.

10          On December 16, 2008, Plaintiff was given a next-day pass to the medical clinic to have a

11  blood draw.  When Plaintiff arrived in the morning, it was about 48 degrees and damp outside.  After

12  Plaintiff turned over his identification card to Defendant Dutra, Defendant ordered him to wait

13  outside instead of in the indoor holding cell as was customary under prison policy and practice.

14  Plaintiff objected on the grounds that it was cold and damp, he had an eye injury, and the indoor

15  holding cell was empty.  Plaintiff's request to wait in the holding cell was denied by Defendant

16  Dutra, who told Plaintiff that PVSP's policy was to make inmates wait outside on the par course

17  regardless of weather.[1]  Medical clinic staff members were not performing any medical duties at that

18  time but were socializing, and Plaintiff argued that he should not have to wait outside in the foul

19  weather with an eye wound while staff sat around talking about their social lives.  Defendant Dutra

20  reiterated PVSP's outdoor staging policy and ordered Plaintiff out of the clinic.

21          After approximately thirty minutes, Plaintiff's eye began to tear up and hurt.  Alarmed,

22  Plaintiff reentered the clinic, reported the pain and tearing to Defendant Dutra, and requested to wait

23  in the holding cell.  Defendant Dutra denied the request based on the outdoor staging policy, at which

24  time Plaintiff requested that he be allowed to return to his housing unit to wait until Defendant Soto,

25  the lab technician, was ready to start.  Defendant Dutra denied the request and told Plaintiff that if

26  he returned to his housing unit, he would have to sign a form refusing medical treatment.  Plaintiff

27

28          [1] The par course is the exercise area.

responded that he was not refusing medical treatment and he was asking to return to his housing unit to wait only because the cold outdoor weather was causing his left eye to hurt and tear up.  Defendant Dutra insisted that the policy was for inmates to wait outside and Plaintiff would have to go back outside if he did not want to sign a treatment refusal form.  Plaintiff again asked to wait in the empty holding cell, but Defendant Dutra refused and ordered him back outside.

Plaintiff went back outside, but after fifteen minutes, he could not stand the pain and tearing any longer.  Plaintiff went inside and once again requested to wait in the holding cell.  After Defendant Dutra denied his request, Plaintiff asked for his ID card back so he could return to his housing unit.  Defendant Dutra refused to give Plaintiff his ID card unless he signed a treatment refusal form, so Plaintiff finally signed the form, in pain and under duress.  When Plaintiff returned to his housing unit and looked in the mirror, he saw blood in the white of his left eye and yellow discharge oozing from the corner of the eye.

Plaintiff filed an inmate appeal describing his ordeal and requesting that prison officials cease creating conditions under which inmates are mistreated and discouraged from seeking medical care and develop a system that did not require inmates to wait outside in cold, inclement weather.  Defendant Lopez responded to the appeal at the informal level of review on January 2, 2009, and cited fourteen medical treatment refusals documented in Plaintiff's file but failed to address any of the issues raised in the appeal.

On January 6, 2009, Plaintiff submitted his appeal to the first formal level of review.  While waiting for the appeal response, Plaintiff spoke with Defendant Greene about the outdoor staging policy and told him that exposure to inclement weather exacerbated the conditions of inmates with preexisting medical conditions.  Defendant Greene stated that Plaintiff and the other inmates were going to have to follow the prison's policies.

On February 17, 2009, Defendant Samareta interviewed only Defendant Soto, who was the lab technician, and based the appeal investigation findings only on that interview, despite the existence of a regulation requiring that the complaining inmate be interviewed.

///

///

4

By then, Plaintiff's left eye felt constantly swollen and he repeatedly sought medical care for the feeling of swelling and the white mass hampering his vision, only to be told it was nothing to worry about.

Plaintiff submitted his appeal to the second level of review on February 24, 2009. Plaintiff was interviewed by Defendant Nesbitt, a medical appeals coordinator, on March 30, 2009. Defendant Nesbitt refused to address the issue of Plaintiff's eye injury or the outdoor staging policy. Defendant Nesbitt blamed the policy on administrative and custodial staff despite knowing that medical staff enforced the policy, too. Defendant Nesbitt denied Plaintiff's appeal and Defendant Igbinosa approved the decision.

On April 8, 2009, Plaintiff submitted his appeal to the third and final level of review. Defendant Walker took ten months to respond to the appeal and in the decision issued on February 4, 2010, Defendant stated that Plaintiff's medical condition had been evaluated and he was receiving treatment deemed medically necessary.

## 2.   Footwear

Due to his hyperthyroidism, Plaintiff was on the chronic care list at PVSP and he had to report to the medical clinic frequently. Plaintiff would often have to stand in the rain without rain gear, a hat, or gloves. Plaintiff sought a pair of state-issued brown leather boots or shoes to wear because all he had was a pair of state-issued cloth tennis shoes, which absorbed water. Shortly after the December 17, 2009, incident, Plaintiff was called to the clinic and had to wait outside in the rain for two hours.

In late December or early January, Plaintiff developed a painful fungal disease on his feet. Plaintiff was given antifungal creams, but the problem persisted. Plaintiff was told by M. George, a senior registered nurse, that until he got better footwear, the fungal problem would remain. Plaintiff continued to attempt to get better footwear, but he was told that PVSP policy prohibited inmates from receiving state-issued brown leather boots or shoes.

On January 15, 2009, Plaintiff filed an inmate appeal complaining that the provision of only water absorbent tennis shoes constituted a risk of harm to his health and that PVSP's policy prohibiting inmates from having state-issued brown leather boots or shoes was an underground

regulation not enacted in compliance with the Administrative Procedures Act. Defendant Oxborrow interviewed Plaintiff and denied his request for alternate footwear despite knowing that the tennis shoes were causing Plaintiff's fungal condition. Thereafter, the appeal was administratively reviewed and denied by Defendants Davis, Mattingly, Duran, and Broddrich.

### B.      Eighth Amendment Claims

#### 1.      Outdoor Staging Policy

Plaintiff challenges PVSP's outdoor staging policy as unconstitutional. The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to him. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The fact that PVSP has an outdoor staging policy for medical appointments does not support a claim for violation of the Eighth Amendment. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). Prison conditions may be restrictive or harsh, Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981), and routine discomfort inherent in the prison setting does not rise to the level of a constitutional violation, Johnson, 217 F.3d at 731 (quotation marks omitted). The Court finds that a general policy requiring adults to wait outdoors for medical appointments does not, standing alone, constitute a denial of the minimal civilized measure of life's necessities. As discussed below, prison officials' treatment of Plaintiff in light of his preexisting medical condition may support a claim, but the existence of the outdoor staging policy, in and of itself, does not.

1             **2.**     <u>**Eye Condition**</u>

2         Plaintiff alleges that he recently had cataract surgery and as a result of being forced to wait

3 outside in the cold by Defendants Dutra and Soto, he suffered eye pain and further damage to his eye.

4 These facts are sufficient to support an Eighth Amendment claim against Defendants Dutra and Soto,

5 who were aware of Plaintiff's eye condition and that the cold air was causing it to hurt and tear up.

6 Despite this knowledge, they refused to let Plaintiff wait for his medical appointment indoors, either

7 in the holding cage or in his housing unit, and according to Plaintiff, the injury to his eye from

8 exposure to the cold weather was noticeable upon his return to his housing unit.  Plaintiff further

9 alleges that a white mass developed.  At the pleading stage, this is sufficient to support a plausible

10 claim for relief against Defendants Dutra and Soto for deliberate indifference to a serious medical

11 need.  <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010).

12         However, Plaintiff's allegations do not state a claim against any other prison officials.  As

13 set forth in the preceding subsection, the existence of a policy requiring inmates to wait outside for

14 medical appointments is not, by itself, a constitutional violation, and Plaintiff's complaints about his

15 eye injury as set forth in his inmate appeals do not have the effect of transferring liability for

16 Defendants Dutra and Soto's actions on December 17, 2008, to those individuals considering

17 Plaintiff's subsequent appeals of that December incident.  Those individuals were not personally

18 involved in the alleged violation of Plaintiff's rights on December 17, 2008, <u>Iqbal</u>, 129 S.Ct. at 1949;

19 <u>Jones</u>, 297 F.3d at 934, and the existence of a grievance process does not create a protected liberty

20 interest entitling Plaintiff to a particular result or allowing Plaintiff to seek redress under the

21 Constitution for the violation of any procedural protections set forth in the governing state

22 regulations, <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003); <u>Mann v. Adams</u>, 855 F.2d 639,

23 640 (9th Cir. 1988).  Further, although Plaintiff apparently continued to have problems with his eye,

24 the exact nature of those problems and the medical care provided are not clear from the amended

25 complaint and there are no facts alleged linking any defendants to the failure to address a continuing

26 medical issue with his eye.

27 ///

28 ///

1              **3.    Inadequate Footwear**

2          Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R.

3   Civ. P. 18(a); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); see also Owens v. Hinsley, ___

4   F.3d ___, ___, No. 09-3618, 2011 WL 923303, at *1 (7th Cir. Mar. 18, 2011) (unrelated claims

5   against different defendants belong in separate suits and complaints violating that principle should

6   be rejected).  In this instance, Plaintiff's claim arising from the failure to provide him with adequate

7   footwear despite his chronic fungal condition is unrelated to his claim against Defendants Dutra and

8   Soto arising out of the injury to his eye, and the footwear claim must be raised in a separate action.

9   The claim shall be dismissed from this action, without prejudice.

10          **C.    Claim for Injunctive Relief**

11          For each form of relief sought in federal court, Plaintiff must establish standing.  Summers

12  v. Earth Island Institute, 555 U.S. 488, ___, 129 S.Ct. 1142, 1149 (2009) (citation omitted); Mayfield

13  v. United States, 599 F.3d 964, 969 (9th Cir. 2010) (citation omitted).  This requires Plaintiff to show

14  that he is under threat of suffering an injury in fact that is concrete and particularized; the threat must

15  be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to challenged

16  conduct of the defendant; and it must be likely that a favorable judicial decision will prevent or

17  redress the injury.  Summers, 129 S.Ct. at 1149 (quotation marks and citation omitted); Mayfield,

18  599 F.3d at 969.

19          In addition, any award of equitable relief is governed by the Prison Litigation Reform Act,

20  which provides in relevant part, "Prospective relief in any civil action with respect to prison

21  conditions shall extend no further than necessary to correct the violation of the Federal right of a

22  particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless

23  the court finds that such relief is narrowly drawn, extends no further than necessary to correct the

24  violation of the Federal right, and is the least intrusive means necessary to correct the violation of

25  the Federal right."  18 U.S.C. § 3626(a)(1)(A).

26          Plaintiff fails to state a claim arising out of the outdoor staging policy and therefore, he does

27  not have standing to seek an injunction prohibiting enforcement of that policy.  18 U.S.C. §

28  3626(a)(1)(A); Summers, 129 S.Ct. at 1149; Mayfield, 599 F.3d at 969.  Given the findings set forth

in this screening order, Plaintiff is currently limited to seeking damages for the past violation of his rights by Defendants Dutra and Soto.

### D.   State Law Claims

In addition to his Eighth Amendment claims, Plaintiff alleges that Defendants' actions and/or omissions constituted assault and battery and violated his rights under the California Constitution, the California Penal Code, and Title 15 of the California Code of Regulations.

### 1.   Assault and Battery Claims

As an initial matter, California's Tort Claims Act requires that Plaintiff exhaust his state law tort claims with the California Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiff does not allege compliance in his amended complaint.

In addition, assault claims require a showing that (1) Defendant threatened to touch Plaintiff in a harmful or offensive manner, (2) it reasonably appeared to Plaintiff that Defendants were about to carry out the threat, (3) Plaintiff did not consent to the conduct, (4) Plaintiff was harmed, and (5) Defendants' conduct was a substantial factor in causing the harm; and battery claims require a showing that (1) Defendants intentionally did an act that resulted in harmful or offensive contact with Plaintiff's person, (2) Plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss, or harm to Plaintiff.  Tekle v. U.S., 511 F.3d 839, 855 (9th Cir. 2007) (citation and quotations omitted).  Plaintiff's amended complaint is devoid of facts supporting claims for assault and battery, even assuming Plaintiff is able to amend to show compliance with the Tort Claims Act.

### 2.   California Constitutional Claim

Plaintiff alleges a violation of the cruel and unusual punishments clause of the California Constitution.  CA Constit. Art. I § 17.  However, there is no private cause of action for damages for violation of article 1, section 17.  Giraldo v. California Dep't of Corr. and Rehab., 168 Cal.App.4th

1   231, 253-57 (Cal.Ct.App. 2008) (citing Katzberg v. Regents of the University of California, 29

2   Cal.4th 300, 329 (2002)); also Davis v. Kissinger, No. CIV S-04-0878 GEB DAD P, 2009 WL

3   256574, at *12 n.4 (E.D.Cal. Feb. 3, 2009), adopted in full, 2009 WL 647350 (Mar. 10, 2009).

4   Accordingly, Plaintiff's state constitutional claim for damages is precluded.

### 3.   Claims for Violation of Penal Code and Title 15 Regulations

6   Plaintiff alleges violations of sections 242 and 673 of the California Penal Code, and section

7   3271 of Title 15 of the California Code of Regulations.  Penal Code section 242 defines battery, and

8   section 673 prohibits cruel, corporal, or unusual punishments, or the infliction or withholding of care

9   that injures or impairs the health of a prisoner.  Title 15 section 3271 provides that employees are

10  responsible for the safe custody of inmates confined in the department's institutions.

11  Plaintiff may not sue Defendants for violation of the penal code, see Gonzaga University v.

12  Doe, 536 U.S. 273, 283-86, 122 S.Ct. 2268 (2002) (basing a claim on an implied private right of

13  action requires a showing that the statute both contains explicit rights-creating terms and manifests

14  an intent to create a private remedy); see also Allen v. Gold Country Casino, 464 F.3d 1044, 1048

15  (9th Cir. 2006) (no private right of action for violation of criminal statutes), and the Court is unaware

16  of any authority for the proposition that there exists a private right of action available to Plaintiff for

17  violation of Title 15 regulations, e.g., Parra v. Hernandez, No. 08cv0191-H (CAB), 2009 WL

18  3818376, at *8 (S.D.Cal. Nov. 13, 2009); Davis, 2009 WL 256574, at *12 n.4.  Therefore, these

19  claims fail as a matter of law.

## III.   Conclusion and Order

21  Plaintiff's amended complaint states an Eighth Amendment claim against Defendants Dutra

22  and Soto arising out of Plaintiff's eye injury.  However, Plaintiff fails to state any other claims under

23  section 1983 or any claims under state law.  The Court will provide Plaintiff with the opportunity

24  to file a second amended complaint curing the deficiencies identified by the Court in this order.

25  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th

26  Cir. 1987).  If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated

27  claims in his amended complaint.  George, 507 F.3d at 607 (no "buckshot" complaints).

28  ///

If Plaintiff does not wish to file a second amended complaint and he is agreeable to proceeding only against Defendants Dutra and Soto on his Eighth Amendment claim, Plaintiff may so notify the Court in writing, and his other claims will be dismissed.  Plaintiff will then be provided with two summonses and two USM-285 forms for completion and return.  Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process on Defendants Dutra and Soto.

If Plaintiff elects to amend, his second amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 129 S.Ct. at 1948-49; Jones, 297 F.3d at 934.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ."  Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220.  Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.      Plaintiff's claims arising from inadequate footwear are dismissed, without prejudice, under Rule 18;

2.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

3.      Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

    a.      File a second amended complaint curing the deficiencies identified by the Court in this order, or

    b.      Notify the Court in writing that he does not wish to file a second amended complaint and he is willing to proceed only against Defendants Dutra and Soto on his Eighth Amendment claim; and

///

1       4.      If Plaintiff fails to comply with this order, this action will be dismissed for failure to

2     obey a court order.

3

4 IT IS SO ORDERED.

5 **Dated:   April 28, 2011**               **/s/ Sheila K. Oberto**
                                              UNITED STATES MAGISTRATE JUDGE